**CARMEN A. TRUTANICH,** City Attorney (SBN (86629)
**WILLIAM W. CARTER,** Chief Deputy City Attorney (SBN 115487)
**TAYO POPOOLA,** Deputy City Attorney (SBN 134564)
**KENNETH T. FONG,** Deputy City Attorney (SBN 140609)
**MICHAEL J. BOSTROM,** Deputy City Attorney (SBN 211778)
700 City Hall East
200 North Main Street
Los Angeles, California 90012
Telephone Number: 213.978.8068
Facsimile Number: 213.978.8214
Email: Michael.Bostrom@lacity.org

Attorneys for Defendant
CITY OF LOS ANGELES

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF LOS ANGELES

| | |
|---|---|
| WORLD WIDE RUSH, LLC, a Pennsylvania corporation, and INSITE OUTDOOR WORKS LA, L.L.C., a Delaware limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF LOS ANGELES, a California municipal corporation and DOE 1 through DOE 10, inclusive,<br><br>Defendants. | Case No.: CV-07-00238 ABC (JWJx)<br><br>(Honorable Audrey B. Collins)<br><br>**CITY OF LOS ANGELES' MOTION FOR CLARIFICATION OF THE AUGUST 26, 2008 AMENDED JUDGMENT AND PERMANENT INJUNCTION RE: MADAME TUSSAUDS' REQUEST FOR VESTED RIGHTS DETERMINATION**<br><br>**Hearing Date:** June 7, 2010<br>**Time:** 10:00 a.m.<br>**Location:** Courtroom 680 |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

NOTICE IS HEREBY GIVEN that on June 7, 2010, at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Audrey B. Collins, Chief United States District Court Judge, in Courtroom 680 of the United States District Court for the Central District of California, located at 255 East Temple Street, Los Angeles, CA 90012, Defendant City of Los Angeles will and hereby does move for clarification of the August 26, 2008, Amended Judgment and Permanent Injunction. Specifically, the City requests clarification that recognizing Madame Tussauds' vested right to install and maintain two supergraphic signs at 6931-6935 Hollywood Boulevard would not amount to the exercise of unfettered discretion in the issuance of sign permits as prohibited by the Injunction. The City brings this Motion on the grounds that the City issued Madame Tussauds building permits to construct supergraphic sign structures in September 2007 and April 2008, and Madame Tussauds performed substantial work and incurred significant liabilities in good faith reliance on the building permits both before the effective dates of the August 2009 permanent ban, and before the effective date of the interim control ordinances that were in place before the permanent ban. As such, Madame Tussauds' supergraphic signs are vested under California law and not prohibited by the City's current ban, or by the prior interim control ordinances.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the concurrently filed declarations of Senior Building Inspector Sako Aghazarian, and Dick Gee, the concurrently filed Request for Judicial Notice, and the concurrently lodged Proposed Order, and such other and further evidence and argument as may be presented in the City's Reply papers, or at the hearing on this Motion.

//
//
//

1

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on April 5, 2010.

Date: May 6, 2010

CARMEN A. TRUTANICH, City Attorney
WILLIAM W. CARTER, Chief Deputy City Attorney
TAYO POPOOLA, Deputy City Attorney
KENNETH T. FONG, Deputy City Attorney
MICHAEL J. BOSTROM, Deputy City Attorney

By: /s/ Michael J. Bostrom
Michael J. Bostrom

Attorneys for Defendant
CITY OF LOS ANGELES

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Since taking office last July, City Attorney Carmen Trutanich and his administration have made enormous progress in guiding the City's regulation of outdoor advertising signs to ensure uniformity and consistency and, most importantly, to ensure compliance with this Court's Orders. This Court recently recognized in its March 30, 2010, Order Re: Motion for Further Contempt that the City "is treading carefully" with its regulation of outdoor advertising signs. This Motion for Clarification is in furtherance of the City Attorney's efforts.

Specifically, the City seeks clarification that it would not violate this Court's August 26, 2008, permanent injunction, which prohibits the exercise of unfettered permitting discretion, if it were to issue two supergraphic sign permits in recognition of Madame Tussauds' vested right to install and maintain such signs at 6931-6395 Hollywood Boulevard. The City believes that Madame Tussauds has a vested right to supergraphic signs because: (1) the sign structures are physically integrated with the newly constructed museum building; (2) the City issued building permits for the building structure (and hence the sign structures) in September of 2007; and (3) Madame Tussauds performed substantial work and incurred significant liabilities in good faith reliance on the building permits both before the effective date of the August 2009 permanent ban, and before the effective date of the interim control ordinances ("ICOs") that were in place before the permanent ban.

In the meet and confer process, World Wide Rush indicated that issuing permits to Madame Tussauds might violate the Court's Injunction because the City continues to take enforcement action against World Wide Rush for installing the Tropicana Juice supergraphic sign at 10801 National Blvd. World Wide Rush's Tropicana Juice sign, however, is not similarly situated to Madame Tussauds' proposed signs. The Tropicana Juice sign was not physically integrated with the building at 10801 National Blvd., and World Wide Rush did not perform substantial work on the sign until after the effective

date of the December ICO. Nonetheless, to ensure compliance with this Court's Orders, and to ensure the continued constitutionality of the August 2009 ban, the City seeks clarification from this Court.

## II. PROCEDURAL BACKGROUND

### A. In August Of 2008, The Court Struck Down The City's Bans On Off-Site And Supergraphic Signs

On August 26, 2008, this Court issued an amended judgment and permanent injunction striking the City's bans on off-site and supergraphic signs as unconstitutional on the ground that the bans granted the City unfettered permitting discretion. *World Wide Rush v. City of Los Angeles*, 579 F. Supp. 2d 1311 (C.D. Cal. 2008). After the Court's injunction, "well-traveled thoroughfares that contained any sort of sizable building were soon pockmarked with Supergraphic Signs." (March 18, 2009, Order Re: Billboards, p. 3.)

### B. In December Of 2008, The City Adopted A Moratorium On New Off-Site And Supergraphic Signs, Except Those With Vested Rights

In order to stop the billboard industry from continuing to wall-paper the City with supergraphic signs, the City adopted ICO No. 180445 (the "December ICO"). (*Id.* at p. 18.) Effective on December 26, 2008, the December ICO placed a moratorium on all new off-site and supergraphic signs. (*Id.*) Specifically, the ICO stated that "[n]o building permit for an Off-Site Sign, including an Off-Site Digital Display or new Supergraphic Sign shall be issued." (*Id.*) The ICO also stated that "[n]o person shall erect, place, alter or construct any Off-Site Sign, including any Off-Site Digital Display or Supergraphic Sign pursuant to a building permit issued prior to the effective date of this ordinance." (*Id.*)

The ICO contained a vested rights exception required by California law. Pursuant to the exception, a new sign could be maintained if the City issued a building permit prior to December 26, 2008, but only if "the building permit holder ha[d]

///

2

1  performed substantial work" in good faith reliance upon the permit before December 26, 2008. (*Id.*)

Under the ICO, work performed was considered substantial if "construction pursuant to a valid building permit ha[d] progressed to the point that one of the inspections required by LAMC Section 91.108.5 ha[d] been made and the work for which the inspection was called ha[d] been approved by the Department of Building and Safety" before December 26, 2008. (*Id.*)

### C. On March 18, 2009, The Court Held That Supergraphic Signs Installed On Existing Buildings With A Cable And Eyebolt System Are Not Vested Unless Fully Installed Before December 26, 2008

The Court first addressed the December ICO's vested rights exception in its comprehensive March 18, 2009, Order Re: Billboards. In that Order, the Court rejected World Wide Rush's claims that the City violated the August 26, 2008, Injunction by enforcing the ICO against World Wide Rush for installing a massive Tropicana Juice supergraphic sign at 10801 National Blvd., using a cable and eyebolt system. The Court found that while LAMC Section 91.108.5 lists seven different inspections, the only inspection relevant to a supergraphic sign installed on an existing building using a cable and eyebolt system would be the final exception, which can only take place after the construction or work is completed. (March 18, 2009, Order, p. 30:9-11.) Because World Wide Rush completed work on the Tropicana Sign after December 26, 2008, the sign violated the ICO. (*Id.* at p. 31:9-10.)

### D. The City Adopted A Second ICO On June 9, 2009

On June 9, 2009, the City adopted a second ICO. Like the December ICO, the June ICO generally prohibited the City from issuing building permits for off-site signs, digital displays, and supergraphic signs, and prohibited the installation of such signs. The June ICO also included an exception, at § 3.B, which reads:

> The prohibitions specified in Section 2 of this ordinance shall not apply to any building permit issued prior to [December

3

26, 2008]:

> If the Department of Building and Safety determines that both substantial liabilities have been incurred, and substantial work has been performed on site, in accordance with the terms of that permit, pursuant to Section 91.106.4.3 of the Los Angeles Municipal Code.[1]

(RJN, Ex. A.)

### E. On October 6, 2009, The Court Denied Liberty Media's Motion for Preliminary Injunction Challenging The ICOs and the City's August 2009 Permanent Ban

On July 27, 2009, the plaintiff in the lawsuit entitled *Community Redevelopment Association LLC, doing business as Liberty Media Group ("Liberty Media") v. City of Los Angeles*, Case No. 08-07584 ABC (JWJx) filed a motion for preliminary injunction seeking to prohibit the City from enforcing the ICOs against it. Liberty Media argued that the City had committed various procedural errors in adopting the ICOs, and that the City had discriminated in its enforcement of the ICOs by allowing two developers, the W Hotel and CIM, to maintain supergraphic signs on their newly constructed buildings.

On August 7, 2009, while Liberty Media's motion was pending, the City adopted a permanent ban on off-site and supergraphic signs. Unlike the ICOs, the new ban does not contain an explicit prohibition on the issuance of new permits. Rather, the ban states:

> **Prohibited Signs.** Sign are prohibited if they:
>
> 9. Are supergraphic signs.
>
> * * *
>
> 11. Are off-site signs, including off-site digital displays, except when off-site signs are specifically permitted pursuant

---

[1] LAMC section 91.106.4.3 discusses the validity of permits and the limit of what permits authorize, and states that permits must comply with other laws.

4

1  to a relocation agreement entered into pursuant to California
2  Business and Professions Code Section 5412.
3                  \* \* \*
4  (RJN, Ex. B.)
5        The ban took effect on August 14, 2009, and contains the following
6  exception:
7        [T]his prohibition shall not apply to any building permit
8        issued prior to the effective date of this ordinance if the
9        Department of Building and Safety determines that both
10       substantial liabilities have been incurred, and substantial work
11       has been performed on site, in accordance with the terms of
12       that permit pursuant to Section 91.1.6.4.3.1 of this Code.
13 (RJN, Ex. B.)
14       On October 6, 2009, this Court issued an Order denying Liberty Media's motion
15 for preliminary injunction, finding that Liberty Media had failed to demonstrate that the
16 ICOs were procedurally defective, or that the City had selectively enforced the ICOs.
17 (RJN, Ex. C.) With respect to the W Hotel and the CIM projects, the Court noted that
18 the City issued all permits for the supergraphic signs for these projects before the
19 effective date of the first ICO, December 26, 2008. (*Id.* at pp. 13:1-3, 16:14-17.)
20       The Court also found that the developers had performed substantial work on the
21 supergraphic sign structures prior to December 26, 2008. First, the Court noted that the
22 City had provided substantial evidence that the supergraphic sign structures at both
23 locations were architecturally integrated into the building structures and "therefore the
24 inspections for the overall structure of the building – such as foundations and steel – are
25 also inspections of the sign structures." (*Id.* at p. 15:11-13; see also *Id.* at p. 17:15-17.)
26 Second, the Court found that the City had demonstrated that numerous inspections and
27 approvals for both projects, including for foundations, steel framing, wall covering and
28 reinforced concrete took place as early as 2007. (*Id.* at p. 14:14-16; see also *Id.* at p.

17:17-23.)

The Court rejected Liberty Media's argument that the only relevant inspections were those performed under the sign permit, and that the City could not rely on inspections and approvals performed under the building permit for the sign structures to demonstrate vested rights. As the Court explained, "the exception in the December ICO is not framed in terms of the permit holder's reliance upon a sign permit. Rather, the ICO's exception refers repeatedly to the building permit holder's reliance on a building permit, requiring, for example, that 'the building permit holder has performed substantial work . . . in good faith reliance on the building permit.'" (*Id.* at p. 13:13-18.)

### III. THE COURT MAY PROPERLY GRANT CLARIFICATION OF THE INJUNCTION

The law is clear that a "person subject to an injunction always has the right to ask the court that is administering it whether it applies to conduct in which the person proposes to engage. If this looks like a request for an 'advisory opinion,' it is one that even a federal court can grant, in order to prevent unwitting contempts [] and frequently does." *In re Hendrix*, 986 F.2d 195, 200 (7th Cir. 1993) *citing Regal Knitwear Co. v. NLRB,* 324 U.S. 9, 15, 89 L. Ed. 661, 65 S. Ct. 478 (1945).

### IV. THE COURT SHOULD CLARIFY THAT ISSUING PERMITS TO MADAME TUSSAUDS WOULD NOT CONSTITUTE UNFETTERED PERMITTING DISCRETION PROHIBITED BY THE INJUNCTION

#### A. Madame Tussauds Has A Vested Right To Install And Maintain Supergraphic Signs At 6931-6935 Hollywood Boulevard

Since Madame Tussauds is asking the City to issue two sign permits now, the relevant starting point in the analysis is the City's current August 2009 ban. As noted above, the August 2009 ban on supergraphic signs does not apply "to any building permit issued prior to the effective date of this ordinance if the Department of Building and Safety determines that both substantial liabilities have been incurred, and

substantial work has been performed on site, in accordance with the terms of that permit pursuant to Section 91.1.6.4.3.1 of this Code." (RJN, Ex. B.)

Here, as demonstrated by the declarations of the City's Senior Building Inspector Sako Aghazarian, and the project's architect, Dick Gee, the proposed supergraphic signs are architecturally integrated into the museum building itself. (Aghazarian Decl., ¶ 3; Gee Decl., ¶ 2.) Specifically, the building's nose cone was specifically designed to contain two large panel walls on the east and west sides of the building in order to display two supergraphic signs. (*Id.*) The nose cone panels were designed so that the supergraphic sign materials can be stretched across the panels and secured behind them. (*Id.*) The Planning Department also stated in its September 6, 2007, approval for the two supergraphic signs that they "are to be architecturally integrated into a proposed development which is entirely new construction." (RJN, Ex. D, p. 12.)

As discussed above, the August 2009 ban on supergraphic signs, by its own terms, does not apply to building permits that were issued before the August 14, 2009, effective date of the ban. Here, the City issued a building permit for the building's foundation (and hence the sign structures' foundation) on September 20, 2007. (Aghazarian Decl., ¶ 4.) The City also issued the general building permit for the above-ground improvements (including the sign structures) on April 29, 2008. (*Id.*, ¶ 5.)

To meet the vested rights exception, the August 2009 ban also requires that substantial liabilities have been incurred and substantial work has been performed on site prior to the August 14, 2009, effective date of the ban. Here, as demonstrated by Inspector Aghazarian's declaration and the Property Activity Reports for both the foundation permit and the above-ground building permit, inspections were conducted and approvals given for foundations, concrete and steel framing on site as early as November 2, 2007. (Aghazarian Decl., ¶¶ 4-5.) In fact, virtually all of the work was completed on the project by August 14, 2009, the effective date of the ban, as evidenced by the fact that the City had issued a temporary certificate of occupancy for the building almost one month earlier on July 17, 2009. (Aghazarian Decl., ¶ 6.) Thus, the vested

rights requirements stated in the August 2009 ban are clearly satisfied.

It also bears noting that supergraphic signs were also vested under the ICOs, which temporarily prohibited supergraphic signs from December 26, 2008, until the August 14, 2009, effective date of the current ban. Indeed, just like the W Hotel and CIM projects at issue in Liberty Media's motion for preliminary injunction, the Madame Tussauds supergraphic sign structures are physically integrated with the new building structure, the building permits for that building structure were issued long before December 26, 2008, and substantial work was performed in reliance on those permits before December 26, 2008. By that date, the foundation and below-ground improvements had been completed and much of the building exterior, including the supergraphic sign structures, had been constructed. (Gee Decl., ¶ 3.)

The only difference here is that, unlike the W Hotel and CIM project, the City has not yet issued the final sign permit to Madame Tussauds authorizing the installation of the sign copy on the supergraphic sign structures.[2] That distinction, however, has no relevance here because the current ban, by its terms, does not apply to supergraphic signs where the developer vested its rights before August 14, 2009, based on the prior issuance of one or more building permits for the sign structures and the performance of substantial work and the incurrence of substantial liabilities. As previously discussed, that is clearly the case with respect to the Madame Tussauds signs.

The City believes that Madame Tussauds' request for two supergraphic signs satisfies the August 2009 ban's vested rights exception (as well as the vested rights exception in the December 2008 ICO). The City, however, seeks clarification from this Court that by issuing two supergraphic sign permits, the City will not be exercising unfettered permitting discretion, as prohibited by this Court's August 26, 2008, Injunction.

---

[2] The City issued all building permits for the W Hotel and CIM supergraphic signs, including the final sign permit authorizing the installation of the sign copy on the supergraphic sign structures, before December 26, 2008.

8

### B. World Wide Rush's Tropicana Sign Is Not Similarly Situated To Madame Tussauds' Proposed Signs

World Wide Rush's attempt to analogize its Tropicana sign at the National site to Madame Tussauds' proposed signs is unavailing. Unlike Madame Tussauds' proposed signs, the Tropicana sign was not architecturally integrated with the building at the National site. In fact, as demonstrated by the evidence submitted in connection with the March, 2009 contempt proceedings, World Wide Rush simply installed an eyebolt and cable system on a preexisting building in order to support its supergraphic signs. (*See, e.g.,* February 12, 2009, and February 19, 2009, Declarations of Principal Inspector Frank Lara, Docket Nos. 206-4 and 211-7.) Additionally, as this Court determined in the March 26, 2009, Order Re: Billboards, World Wide Rush did not perform "substantial work" on its supergraphic sign, as that term is defined in the December ICO, prior to December 26, 2008. (March 18, 2009, Order, p. 31:9-10.) Thus, unlike Madame Tussauds' proposed signs, World Wide Rush had no vested right to install or maintain its supergraphic sign.

### C. The City Attorney Believes That Future Claims For Vested Rights That Are Factually Or Legally Distinct From The Claims Raised By Madame Tussauds, The W Hotel, And CIM Should Be Sent To Non-Binding Arbitration

There are a few additional developers who are requesting that the City recognize that they have vested rights to maintain signs notwithstanding the August 2009 ban. The City Attorney's Office has not yet completed its analysis of those claims. To the extent any of those claims (or any future claims) are factually similar to the claims raised by Madame Tussauds, the W Hotel and CIM, the City will have sufficient guidance from this Court's Order on this Motion, and its October 6, 2009, Order in the Liberty Media case to address them. To the extent that a developer raises a distinct factual or legal claim that departs from this factual and legal framework, the City Attorney believes that the best way to handle the claim would be for the developer and

9

the City to participate in non-binding arbitration before Retired Superior Court Judge Dennis Choate.[3] The City would provide Judge Choate with copies of all of this Court's relevant orders in the various billboard matters, as well as the City's analysis of the developer's vested rights claim under both this Court's Orders and under California law. The developer could also provide its analysis. The City Attorney believes that having an independent neutral provide a written review will demonstrate to the community, the sign industry, and the judiciary, that the City is acting in good faith, adhering to legal standards, and not exercising unfettered discretion in favor of preferred developers as is frequently alleged.

## IV. CONCLUSION

For all the foregoing reasons, the City respectfully requests that the Court grant the City's Motion and clarify that by issuing two supergraphic sign permits to Madame Tussauds, the City will not be exercising unfettered sign permitting discretion as prohibited by this Court's August 26, 2008, Injunction.

Date: May 6, 2010

CARMEN A. TRUTANICH, City Attorney
WILLIAM W. CARTER, Chief Deputy City Attorney
TAYO POPOOLA, Deputy City Attorney
KENNETH T. FONG, Deputy City Attorney
MICHAEL J. BOSTROM, Deputy City Attorney

By: /s/ Michael J. Bostrom
        Michael J. Bostrom

Attorneys for Defendant
CITY OF LOS ANGELES

---

[3] For example, a couple of developers claim to have vested rights not because a building permit was issued for a sign structure prior to December 26, 2008, but because the City approved vesting tentative tract maps for their projects prior to December 26, 2008. See, e.g., Cal. Gov't Code Section 66498.1("When a local agency approves or conditionally approves a vesting tentative map, that approval shall confer a vested right to proceed with development in substantial compliance with the ordinances, policies, and standards" in place at the time the application for the map is deemed complete.) Another developer claims a vested right based on work performed on site that is unrelated to the construction of any sign support structure. The developer claims that its sign rights are vested because but for the expected revenue from the previously approved sign, it would not have moved forward with the development at all.